**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| **FIRST HORIZON BANK**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CASE NO. _____ |
| ) | |
| **PREMIER HOLDINGS, LLC; JOGINDER** ) | |
| **SIDHU, AS PERSONAL REPRESENTATIVE** ) | |
| **OF THE ESTATE OF MANRAJ SIDHU, AND** ) | |
| **IN HIS INDIVIDUAL CAPACITY; JAIPAL** ) | |
| **GILL; and JOHN A. HOWARD** ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF,
BREACH OF FIDUCIARY DUTY, FRAUD,
CIVIL CONSPIRACY, AND BREACH OF CONTRACT**

Plaintiff, First Horizon Bank ("First Horizon"), as successor-in-interest to IBERIABANK, states the following for its Verified Complaint seeking emergency injunctive relief, including a preliminary injunction, the emergency appointment of a receiver, and an accounting, and bringing claims for breach of fiduciary duty, fraud, civil conspiracy, and breach of contract against Defendants Premier Holdings, LLC ("Premier Holdings"); Joginder Sidhu ("Sidhu") as the Personal Representative of the Estate of Manraj Sidhu, and in his individual capacity; Jaipal Gill ("Gill"); and John A. Howard ("Howard"). Defendants Premier Holdings, Sidhu, Gill, and Howard are collectively referred to as "Defendants" or the "Co-Conspirators."

## I.     THE PARTIES

1.      Plaintiff, First Horizon is the banking subsidiary of First Horizon Corporation, a national corporation of regional banking organized and existing under the laws of the United States, with its principal place of business located at 165 Madison Avenue, Memphis, Tennessee 38103.

2.      Defendant Premier Holdings, LLC is an Alabama limited liability company with its principal place of business located at 2660 Eastchase Lane, Suite 300, Montgomery, AL 36117. Premier Holdings' only member, Manraj Sidhu, died on May 24, 2022. The entire LLC interest of Premier Holdings is now held by Joginder Sidhu as the Personal Representative of the Estate of Manraj Sidhu, currently pending as case number 22-00416 in the Probate Court of Montgomery County, Alabama.

3.      Joginder Sidhu is an individual and serves as Personal Representative of the Estate of Manraj Sidhu, currently pending as case number 22-00416 in the Probate Court of Montgomery County, Alabama. Sidhu is a citizen resident of the state of Alabama with his principal place of residence at 821 Griffin Park, Birmingham, AL 35242

4.      Gill is a citizen resident of the state of Georgia with his principal place of residence at 755 Tate Overlook, Marietta, Georgia 30064.

5.      Howard is a citizen resident of the state of Alabama with his principal place of residence at 116 Bluff Springs Drive, Madison, Alabama 35758.

## II.      JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction under 11 U.S.C. § 1334 because Plaintiff is diverse from each Defendant and the amount in controversy, without interest and costs, exceeds $75,000.00.

7.      This Court has personal jurisdiction over each Defendant because each Defendant is "at home" in this District and is thus subject to the jurisdiction of this Court under general personal jurisdiction.

8.      Venue is proper in this Court pursuant 28 U.S.C. § 1391 because one or more Defendant resides in this District and both Defendants reside in Alabama, and because a substantial

part of the property that is subject of this action is situated in this District.

### III.    FACTUAL ALLEGATIONS
### THE LOANS

**A.    Montgomery, Alabama Burger King Loan**

9.    First Horizon provided construction financing to Premier Holdings for the construction of a Burger King restaurant in Montgomery, Alabama, which consisted of one loan to finance the purchase of the leasehold interest and the construction of the restaurant building (the "Montgomery Loan").

10.    On September 4, 2015, to evidence the Montgomery Loan, Premier Holdings executed and delivered a Promissory Note (the "Montgomery Note") to First Horizon in the maximum amount of $1,040,000.00, bearing interest at a fixed rate equal to 4.250% per anum, and with an original maturity date of September 5, 2022, as amended on March 31, 2020.

11.    To induce First Horizon to make the underlying loan, the Montgomery Note is secured by a leasehold construction mortgage and an assignment of construction contracts executed September 4, 2015 by Premier Holdings thereby pledging to First Horizon all of Premier Holdings' right, title, and interest in, to, and under its leasehold interest in the real property commonly known as 4010 Atlanta Highway, Montgomery, Alabama 36109, including all buildings, improvements, and fixtures on, and royalties and profits arising from, the collateral property.

12.    Premier Holdings' former sole member, Manraj Sidhu, who is deceased, personally guaranteed the Montgomery Loan.

13.    On November 14, 2022, Premier Holdings, Sidhu (in his capacity as Personal Representative of the Estate of Manraj Sidhu (the "Estate")), and First Horizon executed an Extension Agreement (the "Montgomery Loan Extension") thereby extending the Montgomery

Loan's maturity date to September 5, 2023, and formally naming Sidhu – as Personal Representative of the Estate – a Guarantor of the Montgomery Loan.

14.     The Montgomery Loan has matured, and neither Premier Holdings nor Sidhu have paid the outstanding principal balance and all other amounts due and owing to First Horizon under the Loan Documents.

15.     A true and correct copy of First Horizon Bank's loan agreement, promissory note, leasehold construction mortgage, assignment of construction contracts, financing statement, amendment, and extension agreement relating to the Montgomery Loan are attached hereto as *composite* **Exhibit A** and are incorporated herein by reference.

### B.     Harpersville, Alabama Burger King Loans

16.     First Horizon provided purchase money financing to Premier Holdings for the construction of a Burger King restaurant in Harpersville, Alabama, which consisted of one loan to finance the purchase of the real property and construction of the restaurant building (the "Harpersville Real Estate Loan"), and a second loan to finance the purchase of all furniture, fixtures, and equipment inside the restaurant (the "Harpersville Equipment Loan," and collectively with the Harpersville Real Estate Loan, the "Harpersville Loans").

17.     On November 27, 2018, evidencing the Harpersville Loans, Premier Holdings executed and delivered two Promissory Notes to First Horizon in the maximum amounts of $1,242,000.00 (the "Harpersville Real Estate Note") and $392,500.00 (the "Harpersville Equipment Note" and collectively with the Harpersville Real Estate Note, the "Harpersville Notes") bearing interest at a variable rate equal to the LIBOR Rate (as defined in the Harpersville Loan Agreement dated November 27, 2018) plus 2.25% per annum.

18.     To induce First Horizon to make the underlying loan, the Harpersville Notes are

secured by a mortgage, security agreement, and assignment of rents and leases executed November 27, 2018 by Premier Holdings thereby pledging to First Horizon all of Premier Holdings' right, title, and interest in and to the real property commonly known as 5482 US-280, Harpersville, Alabama 35078, including all buildings, improvements, and fixtures on, and royalties, leases, rents, and profits arising from, the collateral property.

19.     Premier Holdings' former sole member, Manraj Sidhu, who is deceased, personally guaranteed the Harpersville Loans.

20.     On December 27, 2019, Premier Holdings executed and delivered to First Horizon those certain Amended, Restated, and Increased Promissory Notes thereby increasing the maximum principal amounts of the Harpersville Real Estate Loan to $1,355,387.20 and of the Harpersville Equipment Loan to $460,022.54 (collectively, the "Amended and Restated Harpersville Notes").

21.     Pursuant to the Harpersville Loan Agreement, the Harpersville Real Estate Note's maturity date is November 27, 2025, and the Harpersville Equipment Note's maturity date was November 27, 2023.

22.     Pursuant to the Harpersville Loan Agreement, the rate charged upon the Harpersville Loans converted from LIBOR plus 2.25% to the 1-month Chicago Mercantile Exchange ("CME") Term Secured Overnight Funding Rate ("SOFR") plus 2.36448%, effective July 5, 2023, by virtue of the LIBOR-Conversion letter issued by First Horizon to Premier Holdings on May 26, 2023 (the "Harpersville LIBOR-Conversion letters").

23.     The Harpersville Equipment Loan has matured, and neither Premier Holdings nor Sidhu have paid the outstanding principal balance and all other amounts due and owing to First Horizon under the Loan Documents.

24.     A true and correct copy of First Horizon's loan agreement, promissory notes, amended and restated promissory notes, mortgage, security agreement, financing statement, and Harpersville LIBOR-Conversion letters relating to the Harpersville Loans are attached hereto as *composite* **Exhibit B** and are incorporated herein by reference.

### THE CONTRACTUAL DEFAULTS

25.     The Montgomery Loan and the Harpersville Loans are in default by virtue of Premier Holdings' and Sidhu's failure to timely pay principal and interest when due, and the death of guarantor Manraj Sidhu.

26.     The Montgomery Loan and the Harpersville Equipment Loan is further in default due to Premier Holdings' and Sidhu's failure to pay all amounts due and owing upon the Loans' maturities.

27.     First Horizon provided notice to Premier Holdings and Sidhu of the non-payment and death of a guarantor events of default under the Montgomery and Harpersville Loan Documents on July 7, 2023.

28.     On July 7, 2023, First Horizon also notified Premier Holdings that the Montgomery and Harpersville Loans were accelerated because of the above-referenced events of default, and that the entire principal balance, all accrued and unpaid interest, late fees, costs, expenses, and attorneys' fees were then-due and owing under the terms of the Loan Documents.

29.     The July 7, 2023 Notice (the "2023 Notice") to Defendants is attached hereto as **Exhibit C** and is incorporated by reference herein.

30.     The Notice provided ten (10) days to remit to First Horizon payment for all amounts then due and owing under the Loan Documents.

31.     As of the date of the Complaint, Defendants have failed or refused to cure the

existing defaults or remit payment for the amounts due and owing on the Montgomery Loan and the Harpersville Loans.

32.    On June 6, 2024, First Horizon sent another notice to Defendants advising that the Montgomery Loan and the Harpersville Loans remain in a continued state of default.

33.    The June 6, 2024 Notice (the "2024 Notice") to Defendants is attached hereto as **Exhibit D** and is incorporated by reference herein.

34.    Pursuant to the Loan Documents, Premier Holdings and Sidhu are obligated, jointly and severally, to pay the outstanding amounts due and owing under the Loan Documents, including but not limited to all unpaid principal, all accrued and unpaid interest (regular or default), late fees, expenses, costs, and attorneys' fees, by virtue of continuing defaults.

35.    As of September 26, 2024, Premier Holdings and Sidhu are indebted to First Horizon in the principal amount of $1,869,132.14 plus accrued interest and default interest thereon, late fees, and expenses of collection, including attorneys' fees and the cost of this action (the "Indebtedness").

## THE LEASES

36.    Premier Holdings' Indebtedness to First Horizon is secured by Assignments of Rents and Leases recorded against Premier's fee interest in the Harpersville real property and against Premier's ground leasehold interest in the Montgomery real property. *See* Exs. A & B.

37.    Between July 7, 2023 and June 6, 2024, First Horizon repeatedly asked Premier Holdings to pay First Horizon the rents it was receiving for use and possession of the Harpersville and Montgomery properties pursuant to First Horizon's Assignments of Rents.

38.    In response to the requests referenced in Paragraph 37, Premier Holdings repeatedly told First Horizon that Premier Holdings was not receiving rents from its tenants for use and

possession of the Harpersville and Montgomery properties.

39.     Premier Holdings further represented to First Horizon that on or around January 8, 2024, Bulldog Restaurants, LLC (the "Tenant") became Premier Holdings' tenant of both the Harpersville and Montgomery properties.

40.     First Horizon has since learned that Tenant rejected the Harpersville lease, which Premier Holdings knew at the time or shortly thereafter, in January 2024.

41.     Despite this knowledge, Premier Holdings continued to represent to First Horizon that the Tenant was not paying rent at either location. Premier Holdings made these misrepresentations in furtherance of the conspiracy and unlawful scheme and attempt to defraud First Horizon as described herein.

42.     In or around May 2024, Premier Holdings told First Horizon that the Tenant abandoned the Harpersville property, allowing it to cease operations and go "dark," despite having known it was tenant-less for months. Premier Holdings purposefully withheld this information in furtherance of the unlawful conspiracy described herein.

43.     Due to Premier Holdings' continuing default under the loan documents and false representation that its inability to pay the Indebtedness owed to First Horizon was caused by its Tenant's failure to pay rent, First Horizon exercised its absolute assignment of rents on June 6, 2024 and demanded that the Tenant pay the Harpersville and Montgomery rents directly to First Horizon.

44.     The June 6, 2024 Tenant Rent Notice (the "Rent Notice") is attached hereto as **Exhibit E** and is incorporated herein by reference.

45.     Premier Holdings' Tenant contacted First Horizon to explain that it did not assume the Harpersville lease, never occupied, used, or possessed the Harpersville property, and never

owed rent to Premier Holdings for the Harpersville property.

46.     Premier Holdings' Tenant further informed First Horizon that it does pay rent for the Montgomery property, however that rent is paid directly to the fee interest owner.

47.     First Horizon immediately notified Premier Holdings that the Montgomery property's fee owner is being paid directly by the Tenant in violation of Premier Holdings' ground lease and First Horizon's Leasehold Mortgage and Assignment of Rents.

48.     As recently as August 20, 2024, Premier Holdings represented to First Horizon that it did not consent to the Tenant's arrangement to pay rent directly to the Montgomery fee owner, and that Premier Holdings was going to demand that Tenant and fee owner return the Montgomery lease "to the status quo" and execute acknowledgments of both Premier Holdings' ground lease and First Horizon's leasehold mortgage. First Horizon now knows that this representation by Premier Holdings was false and that Premier Holdings purposefully made this misrepresentation in furtherance of the unlawful conspiracy described herein.

49.     On August 22, 2024, the Tenant provided to First Horizon a document entitled "Amendment to Leases" executed by Tenant and Premier Holdings (by Sidhu) on January 7, 2024 addressing the Tenant's lease of the Montgomery property, amongst others.

50.     The January 7, 2024 Amendment to Leases (the "Amendment to Leases") is attached hereto as **Exhibit F** and is incorporated herein by reference.

51.     The Amendment to Leases was signed by the Tenant, Joginder Sidhu - the Personal Representative of the Estate of Manraj Sidhu – as Manager of Premier Holdings, and Robert Ritchey - as a witness. Ex. F.

52.     First Horizon had no knowledge or notice of the Amendment to Leases and did not consent to Sidhu and Premier Holdings' execution of the same.

53.     As recently as August 28, 2024, Premier Holdings was still telling First Horizon that it neither consented to nor signed the Amendment to Leases, despite it being executed by Sidhu and witnessed by Ritchey. *See* Ex. F. First Horizon now knows that Premier Holdings purposefully made this false representation in furtherance of its unlawful conspiracy described herein.

54.     The Amendment to Leases grants Tenant the option to terminate the subject leases, which was granted without First Horizon's consent, and purports to make other revisions to the terms of the sub-leases also without First Horizon's consent, in violation of the Loan Documents.

55.     Exhibit A to the Amendment to Leases lists Premier Holdings' properties subject to leases being assumed by Tenant. *See* Ex. A to Ex. F.

56.     The Harpersville property is not listed on Exhibit A to the Amendment to Leases. *See* Ex. A to Ex. F.

57.     As of the date of this Complaint, Premier Holdings and Sidhu have not leased the Harpersville property or otherwise put it to any use from which profits or proceeds could be generated to repay First Horizon the amounts owed, thereby impairing First Horizon's right to repayment.

58.     On August 22, 2024, First Horizon discovered that Tenant's paying of rent directly to the Montgomery property fee owner was well-known and consented to by Premier Holdings, and it is very notable that Tenant's rent is the exact amount as Premier Holdings' rent to the fee owner.

59.     Also on August 22, 2024, First Horizon discovered that Tenant's predecessor paid rent directly to the Montgomery property fee owner too, not to Premier Holdings under the sublease. Premier Holdings concealed this material information from First Horizon in furtherance

of the unlawful conspiracy described herein.

60.     The Amendment to Leases extends woefully insufficient payment terms to Tenant, sub-leasing the leasehold interest that secures Premier Holdings' repayment of the Indebtedness to First Horizon for the same monthly amount that Premier Holdings is obligated to pay to the fee owner, thereby impairing First Horizon's right to repayment.

61.     Premier Holdings and Sidhu's decisions have caused the properties, First Horizon's Collateral and sole guaranteed source of repayment for the loans, to become incapable of generating profits or proceeds from which First Horizon could be repaid.

**THE ASSET SALES**

62.     The Estate owns 100% of the limited liability company membership interest of Defendant Premier Holdings.

63.     The Estate owns between 50-100% of the limited liability company membership interests of Premier-related entities, such as Premier Kings Holdings of Alabama, LLC; Premier Kings Holdings, LLC; and Premier Holdings of Georgia, LLC (the "Premier-Related Entities").

64.     Upon information and belief, Premier Holdings, Sidhu (by and through Estate Agent Robert Ritchey), Gill, and Howard, have been liquidating assets owned by Premier Holdings and the Premier-Related Entities, pocketing the profits, and concealing information regarding the disbursement of the liquidation proceeds from First Horizon, which is entitled to such information as a creditor of the Estate and under the Loan Documents.

65.     Premier Holdings, the Premier-Related Entities, and Sidhu – who is being aided and abetted by Estate Agent Robert Ritchey, Gill, and Howard – currently have at least ten parcels of real property listed for sale or under contract for sale (the "Listings").

66.     A true and correct copy of the Listings is attached hereto as **Exhibit G** and is

incorporated herein by reference.

67.    Upon information and belief, Sidhu – by and through Estate Agent Robert Ritchey, who is aided and abetted by Gill and Howard – has sold other Estate assets thereby satisfying certain claims filed against the Estate, but has failed to preserve the proceeds in excess of the claim amounts for the benefit of remaining Estate creditors.

68.    Between February 12, 2024 and April 4, 2024, claims filed against the Estate totaling $1,623,343.33 were released, indicating a vast amount of money has already left the Estate.

69.    A true and correct copy of the Estate docket is attached hereto as **Exhibit H** and is incorporated herein by reference.

70.    Premier Holdings and Sidhu have failed to provide First Horizon with information regarding either the liquidation activity or the disbursement and/or preservation of the liquidation proceeds, particularly those proceeds in excess of any priority claims secured by the liquidated assets, which have been withheld and concealed in furtherance of the unlawful conspiracy described herein.

71.    All conditions precedent to bring this civil action, if any exist, have been satisfied or otherwise waived.

## THE UNLAWFUL CONSPIRACY

72.    Defendant Gill was the Chief Operative Officer ("COO") for Premier Holdings and the Premier-Related Entities. Gill was paid a combined bi-weekly salary of $25,884.62, for an annual salary of $673,000.00.

73.    To induce First Horizon into believing that Premier Holdings was operating on the "up and up," Defendant Howard served as Premier Holdings' Vice President and General Counsel

pursuant to an Employment Agreement dated February 25, 2022 (the "Howard Employment Agreement").

74.     As the Co-Conspirators intended, having a lawyer "in-house" went a long way to convince First Horizon that Premier Holdings was operating above board. And coupled with Gill serving as the COO, First Horizon was misled into believing that the Co-Conspirators were doing the right thing and had no reason to believe that the Co-Conspirators were lining their pockets with Premier Holdings' assets via their fraudulent scheme.

75.     The Co-Conspirators' fraudulent scheme included obtaining loans from unsuspecting lenders like First Horizon to purchase the real property that they subsequently leased to another one of the Premier-Related Entities that operated Burger King restaurants on the property.

76.      Each of the Burger King restaurants was subject to a real property lease agreement between Premier Holdings and the Premier-Related Entities. At all times relevant hereto, the Co-Conspirators, along with other now deceased co-conspirator, controlled the mind, will, and operation of every one of the Premier-Related Entities simultaneously, and used each specific entity in furtherance of their unlawful scheme to defraud First Horizon.

77.     Each one of the Burger King restaurants owned, operated, and/or controlled by the Co-Conspirators obtained a plethora of loans, totaling more than one hundred million dollars from numerous financial institutions. The proceeds from all of the loans were commingled, and all net profits from the Burger King restaurants ultimately made their way into the pockets of the Co-Conspirators. For the sake of being completely accurate, First Horizon notes that some of the funds also made their way into the pockets of the Co-Conspirators' now deceased cohorts or other persons that are not available to be added to this lawsuit.

78.     Co-Conspirators had one primary objective: get rich quick. This goal is memorialized and easily revealed by the fact that the Co-Conspirators (i) set up numerous Premier-Related Entities, all of which were completely controlled by them collectively and did not otherwise have any independent ownership or leadership, and (ii) did not have established business plans or forward looking models for the Entities. The Premier-Related Entities, including Premier Holdings, were created and "propped up" to draw out as much cash as possible, as often and as fast as they could for their own benefit and gain before the lenders, including First Horizon, caught on to the scheme.

79.     Co-Conspirators moved funds among the various Premier-Related Entity bank accounts with no consideration as to which companies' sales generated the funds, who owned the funds, or which loans were secured by the assets derived from the Entities.

80.     The Co-Conspirators falsified records relating to Premier Holdings and the other Premier-Related Entities, and as of the date that First Horizon filed this Complaint for Relief, the Co-Conspirators are still refusing to provide First Horizon an accounting of Premier Holdings' finances and assets.

81.     The Co-Conspirators have purposefully misled First Horizon with respect to Premier Holdings' assets, operations, cash flow, and other financial information and to date, First Horizon is still "in the dark" with respect to what assets Premier Holdings currently owns, the status of Premier Holdings' continued operations, what happened to the millions of dollars of real property that Premier Holdings previously owned, Premier Holdings' ability to payoff the indebtedness owed to First Horizon, how much cash Premier Holdings currently has in its accounts, or how much money actually flows through Premier Holdings on a daily, weekly, or monthly basis.

82.     All First Horizon knows is that (i) millions of dollars in real property that Premier Holdings previously owned has been sold for a profit; (ii) those profits went to the Co-Conspirators; (iii) the Co-Conspirators currently are in the process of selling off millions of dollars of Premier Holdings' remaining assets; (iv) the Co-Conspirators are getting richer by the day; and (v) First Horizon's loans to Premier Holdings have been in default for more than a year, and no payments are being paid to First Horizon by Premier Holdings.

83.     The Co-Conspirators are operating a scheme and artifice to line their pockets with all of Premier Holdings' profits and to siphon off all of the assets. Every decision, act, asset sale, agreement entered into, or action being taken by Co-Conspirators on behalf of Premier Holdings or the Premier-Related Entities, is being done in furtherance of their unlawful conspiracy.

84.     The Co-Conspirators have shown and otherwise made known that they will not cease their conspiratorial conduct absent judicial intervention.

85.     Moreover, absent immediate judicial intervention, all of Premier Holdings' assets will be permanently dissipated by the Co-Conspirators, who currently are set to "close" on the sale of another valuable Premier Holdings' asset by the end of September, 2024.

86.     If the Co-Conspirators are not enjoined from completing this sale, they will close the transaction and funnel all the profits derived therefrom directly in their pockets, which obviously will result in the funds being unavailable to pay the indebtedness owed to First Horizon.

87.     Finally, because the Co-Conspirators control the mind, will, and operations of Premier Holdings, and otherwise are and always have been an alter ego of Premier Holdings, including when the Loans were obtained from First Horizon, as well as with respect to all modifications and other matters relating to the Loans, the Co-Conspirators owed fiduciary duties to First Horizon.

## IV.   <u>CAUSES OF ACTION</u>
### COUNT ONE
### APPOINTMENT OF A RECEIVER

88.     First Horizon repeats and realleges paragraphs 1-87 of this Complaint as though fully set forth herein.

89.     Defendants' continued control over Premier Holdings and its assets, including First Horizon's Collateral, not only will diminish the value of the Collateral pledged to First Horizon, but also will jeopardize First Horizon's ability to collect the Indebtedness, and in all of Premier Holding profits being siphoned off by Defendants, thereby causing further damage to First Horizon and other Premier Holdings creditors.

90.     Defendants' continued liquidation of Premier Holdings' assets will also diminish the value of the Collateral pledged to First Horizon and will jeopardize First Horizon's ability to collect the Indebtedness or otherwise obtain relief against Premier Holdings.

91.     This Court has the authority to grant the requested relief pursuant to Fed. R. Civ. P. 66 and 28 U.S.C. § 754.

92.     First Horizon has the right to have a receiver appointed in this action, which Premier Holdings has consented to, under the terms of the Loan Documents. *See, e.g.*, Exhibit B, Mortgage, §15(c) at p. 10.

93.     Under the control of the Defendants, the value of First Horizon's leasehold mortgage securing the Montgomery Loan has been severely diminished because Defendants have not only failed to charge appropriate rent from Premier Holdings' sub-tenant (*i.e.* an amount greater than the amount owed by Premier Holdings to the property's fee owner each month), but also failed to even collect the rent that is charged from the subtenant.

94.     Under the control of Defendants, the value of First Horizon's mortgage securing

the Harpersville Loans has been severely diminished in that Premier Holdings allowed the property's lease to terminate and failed to secure a new tenant to lease the property, leaving the Harpersville, Alabama property vacant and profitless. Defendants' actions in this regard also constitute unlawful waste, which Defendants are not willing to cure.

95.     Unless a receiver is appointed, there is imminent danger that the Collateral pledged as security for repayment of the Premier Holdings' Indebtedness will be further lost, destroyed, or diminished in value, and that any proceeds or other funds that do become available to repay First Horizon – from regular operations or from asset liquidations, will continue to be concealed and dissipated by Defendants.

96.     Appointment of a receiver is necessary for First Horizon to obtain an accurate accounting regarding the Collateral, and to preserve, protect, and maximize the value of the Collateral.

97.     Preservation of the value of the Collateral is necessary to maintain a reasonable expectation of repayment of the amounts due and owing under the Loan Documents, particularly because no revenue is currently being derived from the Collateral by Defendants and/or Defendants are misappropriating any such revenue.

98.     First Horizon reasonably believes that its security in the Collateral is endangered and is likely to be rendered inadequate or lost without the immediate appointment of a receiver.

99.     The potential harm to First Horizon if a receiver is not appointed is irreparable and First Horizon has no adequate remedy at law to remedy the harm.

100.    The potential harm to First Horizon outweighs any conceivable harm to the Defendants.

101.    Without immediate relief, the *status quo* may result in the loss of a significant

source of repayment of the substantial sums owed under the Loan Documents. Accordingly, equitable considerations weigh in favor of the Court's appointment of a receiver over Premier Holdings' interest in the Collateral properties.

102.    The proposed scope and powers of the receivership is for Premier Holdings' current operations and its interests in the Collateral (the "Receivership Assets and Operations," which shall include Premier Holdings' leasehold interest subject to a sublease of the Montgomery, Alabama property, and Premier Holdings' fee ownership of the Harpersville, Alabama property) in order to control, marshal, preserve, maintain, and potentially liquidate the Collateral.

103.    First Horizon requests that this Court appoint David Anthony, of Exo Legal PLLC, as receiver of the Receivership Assets and Operations.

104.    Mr. Anthony has extensive experience and is qualified to serve as a receiver over the Receivership Assets and Operations. An affidavit executed by David Anthony certifying his qualifications and experience will be submitted contemporaneously with Plaintiff's forthcoming Emergency Motion.

## COUNT TWO
## TEMPORARY RESTRAINING ORDER

105.    First Horizon repeats and realleges paragraphs 1-104 of this Complaint as though fully set forth herein.

106.    Pursuant to the provisions of the Loan Documents, the Defendants are required to repay the Indebtedness, but have failed and refused to honor their obligations to do the same.

107.    Under the terms of the Loan Documents, First Horizon has the right to take possession of the Collateral and to receive the proceeds derived from the Collateral.

108.    Under the custody and control of Defendants, the Collateral's value has been severely diminished and First Horizon's right to receive the proceeds derived from the Collateral

has been destroyed because Defendants have allowed the Collateral to become profitless.

109.    First Horizon reasonably believes that its interest in the Collateral is endangered and likely to be lost or rendered inadequate without entry of injunctive relief preventing the Defendants from transferring, disposing, wasting, and converting all or any portion of any rents, royalties, issues, profits, revenue, income, or other proceeds of any kind whatsoever, derived, generated, or related to or from the Collateral, and any other property securing the Indebtedness.

110.    Therefore, in addition to the rights granted to First Horizon under the Loan Documents, equity dictates that First Horizon be granted a temporary restraining order and, upon hearing, a preliminary and permanent injunction:

a.    Prohibiting the Defendants, and their members, officers, directors, employees, agents, managers, shareholders, principals, and/or owners, or anyone acting on or under the Defendants' behalf or at Defendants' direction, from transferring, disposing, wasting, and converting all or any portion of any rents, royalties, issues, profits, revenue, income, or other proceeds of any kind whatsoever, derived, generated, or related to or from the Collateral, and any other property securing the Indebtedness owed or that could be used to repay the Indebtedness owed;

b.    Directing the Defendants to provide an accounting to First Horizon for all royalties, issues, profits, revenue, income, or other proceeds of any kind whatsoever, derived, generated, or related to or from Premier Holdings' operations and activities, the Collateral, and any other property securing the Indebtedness owed, that Defendants have collected since July 7, 2023;

c.    Directing the Defendants to remit any and all royalties, issues, profits, revenue, income, or other proceeds of any kind whatsoever, derived, generated, or related to or from the Collateral and operations and activities of the Defendants related thereto, and any other property securing the Indebtedness owed to the duly appointed receiver;

d.    Surrender possession of Premier Holdings' interest in the Collateral and its operations to allow the Receiver to operate the same;

e.    Directing the Defendants to disclose to First Horizon all assets or property of value which has been transferred from the Defendants to any third person, independent entity, related entity, or insider since January 1, 2022; and

19

f.      Directing the Defendants to disclose all financial accounts controlled by Premier Holdings, any insider of Premier Holdings, to include any partner, director, officer, owner, member, shareholder, or person in control, or any relative of any partner, director, officer, owner, member, shareholder, or person in control.

111.    First Horizon will suffer immediate and irreparable injury, loss, and damage unless the Defendants and those under the Defendants' control and direction are restrained and enjoined as requested hereunder.

112.    Moreover, First Horizon is likely to prevail on the merits of this Complaint and the balance of equities favors entry of the requested equitable relief.

113.    The injuries, losses and damage to First Horizon cannot be remedied by money damages alone.

114.    Because First Horizon has no adequate remedy at law and there is a substantial likelihood that it will prevail on the merits of this Complaint, the equitable relief sought herein is appropriate.

## COUNT THREE
## TEMPORARY AND PERMANENT INJUNCTION

115.    First Horizon repeats and realleges paragraphs 1-114 of this Complaint as though fully set forth herein.

116.    First Horizon has first priority perfected security interests and secured positions in the Collateral.

117.    Based on the Defendants' failure to meet their obligations under the Loan Documents, Defendants' conduct that has resulted in the Collateral's value being severely diminished, and Defendants' unlawful conspiracy described herein, First Horizon has a good faith and reasonable basis for being gravely concerned about the protection and preservation of the Collateral and about its reasonable expectation to be collect the Indebtedness.

118.    Absent entry of a temporary injunction restraining and enjoining the Defendants from collecting, transferring or disposing of any of the Collateral and any other asset of Premier Holdings, First Horizon reasonably believes that the Collateral and all other assets of Premier Holdings may be transferred, disposed, wasted, expended, converted and/or further destroyed in violation of the Loan Documents, thereby causing irreparable harm to First Horizon.

119.    As manifested in the foregoing factual allegations, First Horizon is likely to prevail on the merits of this action.

120.    First Horizon has sustained and will continue to sustain immediate and irreparable injury as a result of the Defendants' voluntary and intentional actions concerning Premier Holdings' obligations under the Loan Documents and the Collateral securing the Indebtedness, and Defendants' failure and refusal to honor those obligations.

121.    With respect to such conduct, First Horizon has no adequate remedy at law.

122.    The balance of the equities favors the issuance of a temporary injunction in favor of First Horizon.

123.    Accordingly, First Horizon requests that this Court enter a temporary injunction requiring the Defendants, its principals and agents to:

    a.  Preserve intact all Collateral, and any income derived therefrom, currently in their possession or subsequently received pending the appointment of a receiver;

    b.  Immediately pay, upon appointment of a receiver, all income and proceeds in the possession or subsequently received from the Collateral or Premier Holdings' operations and activities related to the Collateral to the receiver;

    c.  Surrender control of Premier Holdings' interests in the Collateral in order to allow the receiver to control and manage the same; and

    d.  Turn over to the receiver all books, records, and accounts relating to and/or affecting the Collateral.

124.     Upon the hearing of this cause, First Horizon requests that the Court issue a permanent injunction prohibiting the Defendants and their officers, directors, employees, agents, managers, representatives, shareholders, principals, and/or owners (of all or any portion of an interest in Premier Holdings) and those under the control and direction of the Defendants from transferring, disposing, wasting, and converting all or any portion of any of the Collateral and directing the Defendants to turn over to the receiver the operations and activities of Premier Holdings along with all Collateral in their possession or subsequently received.

**COUNT FOUR**
**BREACH OF FIDUCIARY DUTY**

125.     First Horizon repeats and realleges paragraphs 1-124 of this Complaint as though fully set forth herein.

126.     Sidhu, as the Personal Representative of the Estate, is a fiduciary and owes fiduciary duties to interested persons in the Estate, including creditors. Ala. Code § 43-2-833(a).

127.     Sidhu may act on behalf of the Estate, "but in trust however, for the benefit of the creditors and others interested in the estate." Ala. Code §§ 43-2-839 & 43-8-1(10).

128.     First Horizon Bank is a creditor and interested person of the Estate. Ala. Code § 43-8-1(14).

129.     Sidhu executed the Amendment to Leases, which purports to amend the sublease pledged as collateral and assigned to First Horizon, without notifying or obtaining prior consent from First Horizon, in violation of First Horizon's right and interest in the sublease.

130.     The Amendment to Leases memorializes terms of Premier Holdings' agreement with a new subtenant for the exact same monthly payment that Premier Holdings is required to pay to the fee-owner of the property under the Ground Lease, upon which First Horizon holds its leasehold mortgage.

131.     In entering the Amendment to Leases without notifying and obtaining prior consent from First Horizon, Sidhu not only violated First Horizon's contract and property rights, but also breached his fiduciary duty owed to First Horizon as a creditor of the Estate.

132.     As a direct and proximate result of Sidhu's breach of his fiduciary duties, First Horizon has been damaged by:

   a.   Failing to allow the Collateral to generate any profits or proceeds to which First Horizon is entitled;

   b.   Impairing First Horizon's prospect of repayment by eliminating all income sources;

   c.   Diminishing the value of First Horizon's Collateral; and

   d.   Eliminating First Horizon's ability to collect rents paid for the use of its Collateral, which it has an absolute right to.

**COUNT FIVE**
**FRAUD**

133.     First Horizon repeats and realleges paragraphs 1-132 of this Complaint as though fully set forth herein.

134.     Premier Holdings and Sidhu agreed to collect rents from those using the Collateral and remit the proceeds to First Horizon as repayment of the Indebtedness.

135.     Premier Holdings and Sidhu told First Horizon that they would demand the rents that Premier Holdings was entitled to under its agreements with tenants in possession of both the Montgomery and Harpersville properties.

136.     At the time the statements referenced in paragraph 135 were made, Premier Holdings and Sidhu knew that Premier Holdings was not entitled to rents from the Montgomery property because Premier Holdings consented to Tenant paying rent directly to the fee-owner for use of the Montgomery property.

137.    At the time the statements referenced in paragraph 135 were made, Premier Holdings and Sidhu knew that Premier Holdings was not entitled to rents from the Harpersville property because it knew that there is no tenant of Harpersville, and that Premier Holdings allowed the previous Harpersville lease agreement to be terminated.

138.    Defendants made these statements to First Horizon to conceal the fact that First Horizon's Collateral is currently unable to generate any proceeds from which repayment was expected and the fact that Defendants' were engaged in a unlawful scheme and artifice to defraud First Horizon and to line the Co-Conspirators' pockets with all of the profits derived from Premier Holdings' operations and activities.

139.    Defendants also told First Horizon that they neither consented to nor signed the Amendment to Leases.

140.    At the time the statements referenced in paragraph 139 were made, Premier Holdings and Sidhu both knew of and consented to the Amendment to Leases, as evidenced by Sidhu and Ritchey's execution of the same on or around January 7, 2024.

141.    Defendants knew that these statements were false at the time that they made them to First Horizon.

142.    Defendants made these statements to induce First Horizon to forbear from exercising its rights and remedies, refrain from taking possession and control of the Collateral, and decline to foreclose on Premier Holdings' interest in the properties because it expected to receive the rents and profits generated by the Collateral to which it is entitled.

143.    Defendants knew that Premier Holdings' interest in both Montgomery and Harpersville was effectively rendered unable to generate profits because of Defendants' fraudulent conduct.

144.   The Co-Conspirators are [i] paying themselves the profits from the Premier-Related Entities, including Premier Holdings, [ii] rapidly selling off millions of dollars of assets owned by the Premier-Related Entities for their own benefit and gain, and [iii] concealing from First Horizon all information, including the actual amount of proceeds derived from Defendants' conduct, in furtherance of the unlawful scheme described herein.

145.   Defendants' fraud has damaged First Horizon in that its Collateral has diminished in value, its prospect for repayment has been jeopardized, its right to rents and profits has been completely ignored, and the value of that right has been decimated.

## COUNT SIX
## CIVIL CONSPIRACY

146.   First Horizon repeats and realleges paragraphs 1-144 of this Complaint as though fully set forth herein.

147.   The Co-Conspirators have engaged in a civil conspiracy against First Horizon.

148.   Premier Holdings, Sidhu, Gill, and Howard, who were being aided and abetted by Estate Agent Robert Ritchey, have conspired to commit fraud against First Horizon by, *inter alia*, [i] making false representations to First Horizon as described herein; [ii] concealing their actions; [iii] wrongfully liquidating Premier Holdings' assets and siphoning off the funds and profits of Premier Holdings; [iv] providing false information to First Horizon; and [v] entering into agreements that are contrary to the Loan Documents and lying about the origin and validity of the agreements that they entered into with those third-parties, all of which has resulted in severe damage to the value of First Horizon's Collateral and to First Horizon's ability to collect the Indebtedness, and has otherwise caused First Horizon to suffer significant monetary losses.

149.   Premier Holdings', Sidhu's, Gill's, and Howard's actions have benefitted, and are only befitting, themselves, and were taken in complete derogation of First Horizon's rights.

150.    The fraudulent conduct committed by the Co-Conspirators constitutes a civil conspiracy, for which First Horizon is owed relief.

## COUNT SEVEN
## BREACH OF GUARANTY BY THE ESTATE

151.    First Horizon repeats and realleges paragraphs 1-150 of this Complaint as though fully set forth herein.

152.    The Montgomery Note and all accompanying loan documents, as reaffirmed by the Montgomery Loan Extension, constitute valid and binding legal contracts between Defendant Sidhu, as Personal Representative of the Estate, and First Horizon.

153.    First Horizon is entitled to enforce those contracts, and Sidhu is obligated to First Horizon for payment and performance of all obligations thereunder.

154.    Sidhu has breached his obligations to First Horizon by, among other things, failing to pay First Horizon principal and interest payments when due, failing to pay all amounts due and owing upon acceleration of the Montgomery Loan, failing to pay all amounts outstanding upon the Montgomery Loan's maturity date of September 5, 2023, failing to maintain and preserve the Collateral, diminishing the value of the Collateral, preventing the Collateral from generating profits or proceeds, and impairing First Horizon's prospect for repayment.

155.    As a direct and proximate result of Sidhu's breach of the Loan Documents, First Horizon has been damaged and is entitled to compensatory damages and all other amounts it is entitled to under the Loan Documents, including without limitation, default interest, late fees, attorneys' fees, other costs of collection, and the costs of this civil action incurred by First Horizon in collecting the Indebtedness.

## V.    PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, First Horizon prays for the appointment

Receiver, and that a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction be entered against Defendants, thereby enjoining Defendants, their agents, specifically including Estate Agent Robert Ritchey, representatives, successors, and assigns from:

1. Taking any action with respect to the Collateral without the First Horizon's written consent;

2. Withdrawing any funds from any First Horizon or other depository account relating to the Premier Holdings of the Collateral;

3. Terminating, or causing to be terminated, any license, permit, contract or agreement relating to the Collateral or Premier Holdings;

4. Destroying any of Defendants' books and records; deleting any information from computers, computer records, or databases; or taking any other action to destroy or remove materials or information of or concerning Premier Holdings or the Collateral; or

5. Taking any other action that may interfere with the profitability of the Collateral, Premier Holdings, or First Horizon's rights and interests in the Collateral.

**WHEREFORE, PREMISES CONSIDERED**, First Horizon further prays that judgment be entered in its favor and against the Defendants as follows:

1. Entering judgment in First Horizon's favor and against Defendants Premier Holdings, Sidhu, Gill, and Howard, jointly and severally, in an amount to be determined by the trier of fact, plus further accruing interest, collection costs, attorneys' fees, and all costs incurred in connection with this action;

2. Appointing David Anthony, of Exo Legal PLLC, as receiver (the "Receiver") of the Receivership Assets and Operations;

3. Authorizing, but not requiring the Receiver to maintain or operate the businesses of Premier Holdings and to take such actions which the Receiver, in his discretion, deems appropriate, including without limitation those actions necessary to complete the processing, collection, preservation and liquidation of the Receivership Assets and Operations;

4. Authorizing the Receiver to take physical possession of the Receivership Assets and Operations and to manage, operate and protect the Receivership Assets and Operations, and to take such actions as deemed reasonable and necessary by the Receiver to take possession of the Receivership Assets and Operations, wherever located, to exercise

full and exclusive control over, to prevent waste, and to preserve, manage, secure, safeguard and sell the Receivership Assets and Operations;

5. Authorizing the Receiver to obtain, as necessary, all of Premier Holdings' tangible and electronic business records and documents pertaining to the Receivership Assets and Operations, all notes and correspondence pertaining to the Receivership Assets and Operations, all computer databases, files, ledgers, journals, and all accounting records pertaining to the Receivership Assets and Operations, and to the extent that Premier Holdings has employees who are able, and at the sole expense of the Receiver, order Premier Holdings to reasonably cooperate in providing such technical assistance as necessary to allow the Receiver to obtain all computer databases and files pertaining to the Receivership Assets and Operations and proceeds of the foregoing, including but not limited to providing computer software manuals, technical instructions, software, and other assistance as necessary to enable the Receiver to perform its duties hereunder;

6. Ordering that the Receiver shall have all of the powers and authority usually held by receivers and reasonably necessary to accomplish the purposes herein stated;

7. Enjoining Defendants and their officers, directors, employees, agents, specifically including Estate Agent Robert Ritchey, managers, representatives, shareholders, principals, and/or owners from interfering with the duties and rights of the Receiver and/or First Horizon;

8. Directing payment of any revenue, income, profits, or other proceeds related to or received for the Collateral to the Receiver and/or First Horizon;

9. Providing all other relief as requested herein and as may be necessary to preserve and protect the Collateral and aid in the duties conferred on the Receiver and/or First Horizon by this Court to prevent the unauthorized transferring, disposing, wasting, and converting of all or any portion of the Collateral;

10. Punitive damages;

11. Treble damages; and

12. Granting any such other, further relief, both general and specific, to which First Horizon may be entitled and to which this Court deems just and proper.

Respectfully submitted this the 26th day of September 2024.

/s/ Danielle E. Douglas
Danielle E. Douglas (AL Bar No. 1987T23V)
ADAMS AND REESE LLP
1901 Sixth Avenue North, Suite 1110
Birmingham, Alabama 35203
(205) 250-5000

(205) 250-5034 (facsimile)
danielle.douglas@arlaw.com

*/s/ Clarence A. Wilbon*

Clarence A. Wilbon (TN Bar No. 023378)
(pro hac vice admission pending)
ADAMS AND REESE LLP
6075 Poplar Ave, Suite 700
Memphis, TN  38119
Telephone: (901) 525--3234
Facsimile: (901) 524-5419
Clarence.Wilbon@arlaw.com

*/s/ Thomas W. Lawless*

Thomas W. Lawless (TN Bar No. 009211)
(pro hac vice admission pending)
LAWLESS & ASSOCIATES, P.C.
701 Broadway, Suite 403
Nashville, TN 37203
Telephone: (615) 351-7839
Facsimile: (615) 985-0900
Tomlawless@comcast.net

***Attorneys for Plaintiff First Horizon Bank***

**THIS IS PLAINTIFF'S FIRST REQUEST FOR EXTRAORDINARY RELIEF IN THIS MATTER.**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and exact copy of the foregoing was delivered to a private process server to be served on the following, by hand delivery, this 26th day of September 2024.

Premier Holdings, LLC
Attn: Joginder Sidhu (Reg. Agent)
2660 Eastchase Lane, Suite 300
Montgomery, AL 36117
*Defendant*

Joginder Sidhu
As Personal Representative of the
Estate of Manraj Sidhu
c/o Robert Ritchey, Esq.
Lakeview Center
2660 East Chase Lane, Suite 300
Montgomery, AL 36117
*Defendant*

Joginder Sidhu, individually
821 Griffin Park
Birmingham, AL 35242
*Defendant*

Jaipal Gill
755 Tate Overlook
Marietta, GA 30064
*Defendant*

John A. Howard
116 Bluff Springs Drive
Madison, AL 35755
*Defendant*

*/s/ Danielle E. Douglas*
OF COUNSEL